Dear Honorable Walter J. Behr Mayor, Town of Somerset
You have requested our opinion whether a municipal charter may include a ballot initiative — a process by which citizens may propose legislation which, if approved by the voters, becomes law without action by the municipal legislative body. In particular, you ask whether the Town of Somerset may amend its charter to include an initiative process.
You provided a copy of an opinion by the Town Attorney on this question. That opinion did not reach a firm conclusion because of the absence of any controlling authority construing Article XI-E, the municipal home rule amendment of the State Constitution.
However, the Town Attorney noted that the Court of Appeals has held that an initiative process would unconstitutionally interfere with the authority of the local legislative body in those jurisdictions that have adopted home rule under Article XI-A of the Maryland Constitution.
The Town Attorney has accurately summarized existing law. Because the municipal home rule amendment is not as restrictive as Article XI-A in terms of governmental structure, we believe that the cases under the latter provision do not control the answer to your question. In our opinion, the Town may amend its charter to allow for a ballot initiative. Legislation adopted by means of an initiative would be subject to the same limitations as the legislation enacted by the Town Council under the Constitution, public general law, and federal law.
 I The Initiative
The initiative, like the referendum, was a measure advocated by the Progressive Reform movement in the early 20th century, which sought to limit the influence of wealthy special interests in favor of the electoral power of voters.[1] See Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 226-27 (1999) (Rehnquist, J., dissenting). An initiative process allows citizens to propose laws and to enact or reject them at the polls. Cheeks v. Cedlair Corp., 287 Md. 595,613 n. 9, 415 A.2d 255 (1980). The referendum allows voters to petition an enactment of a legislative body to a vote of the people. Ritchmount Partnership v. Board of Supervisors of Elections, 283 Md. 48, 60,388 A.2d 523 (1978). Despite their common lineage, the two measures bear a different relationship to the legislative body. In a referendum process, the legislative body remains the "primary legislative organ . . .[that] has formulated and approved the legislative enactment" which is then referred to the voters; by contrast, the initiative process "completely circumvents the legislative body, thereby undermining its status as the primary legislative organ." Cheeks v. Cedlair Corp.,287 Md. at 613.
The use of an initiative process to enact legislation is not necessarily inconsistent with representative government. As the Supreme Court has explained, "[u]nder our constitutional assumptions, all power derives from the people, who can delegate it to representative instruments which they create . . . In establishing legislative bodies, the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to the legislature." City of Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668, 672 (1976) (internal citations and footnotes omitted). For example, the tradition of the town meeting, common in some states, is a reservation of such power, reflecting "a practical and symbolic part of our democratic processes." Id. at 672-73.
The Maryland Constitution provides for the use of the referendum in certain circumstances, but does not provide for an initiative process at the State level. See Maryland Constitution, Article XVI.[2] At the municipal level, an initiative process must be derived from the State Constitution, State statute, or the local charter. 5 McQuillin, The Law of Municipal Corporations § 16.49 (3rd ed. rev. 1996). The Maryland Constitution explicitly provides for an initiative process for amending a municipal or county charter. See Maryland Constitution, Article XI-A, § 5 (amendment of Baltimore City charter or county charter); Article XI-E, § 4 (amendment of municipal charter). However, the authority to amend a charter by initiative is distinct from the authority to legislate by initiative. Neither the Maryland Constitution nor any State statute provides express authority for an initiative process to enact legislation in a municipality. Thus, we consider whether the Town voters could obtain that power by a charter amendment.
 II Municipal Charters and the Initiative
A. Municipal Home Rule
Article XI-E of the State Constitution, known as the municipal home rule amendment, is designed to allow municipalities to govern themselves in local matters. Inlet Associates v. Assateague House Condominium Ass'n, 313 Md. 413, 425, 545 A.2d 1296 (1988). Section 1 of Article XI-E prohibits the General Assembly from enacting a law relating to the "incorporation, organization, government, or affairs" of a municipal corporation unless the law applies to a class of municipalities.[3]
Section 3 expressly authorizes a municipal corporation to amend its charter "relating to the incorporation, organization, government, or affairs" of the municipality.[4]
Other sections of Article XI-E set limits on the municipal legislative authority with respect to certain subjects and address the relationship between municipal charters and laws enacted by the General Assembly.[5]
Following ratification of Article XI-E in 1954, the General Assembly enacted legislation to implement municipal home rule. Chapter 423, Laws of Maryland 1955. That legislation is codified in Article 23A of the Annotated Code of Maryland, together with a broad grant of legislative authority for municipal corporations. See Annotated Code of Maryland, Article 23A, § 1, 23A, § 2; see also Inlet Associates v. Assateague House Condominium Ass'n, 313 Md. at 425.
B. Whether a Local Initiative is Municipal Charter Material
A municipal charter is often equated to a local constitution. See, e.g., 80 Opinions of the Attorney General 227, 229 (1995). "The basic function of a constitution or a charter is to distribute power among the various agencies of government, and between the government and the people . . . A charter . . . is the organic, the fundamental law, establishing basic principles governing relationships between the government and the people." Board of Supervisors of Elections v. Smallwood,327 Md. 220, 237, 608 A.2d 1222 (1992) (citations omitted).
Because a municipal charter establishes a framework for local government, there are limits on what a charter may address. While either the municipal legislative body or the voters may initiate a charter amendment relating to "the incorporation, organization, government, or affairs" of the municipal corporation, they may not "legislate" through the charter. In other words, a municipal charter amendment must be "charter material."[6]
A charter amendment that gives municipal voters a right to initiate legislation relates to the form and structure of the municipal government. See, e.g., Maryland State Administrative Board of Election Laws v. Talbot County, 316 Md. 332, 348, 558 A.2d 724 (1989) (while the power of direct legislative initiative may constitute a part of the form and structure of government, such power is repugnant to Article XI-A of the Constitution). Thus, in the parlance of Article XI-E of the Constitution, the legislative initiative concerns the "organization, government, or affairs" of the municipality.
Of course, the municipal home rule amendment does not give municipal corporations absolute autonomy. 88 Opinions of the Attorney General ___ (2003) [Opinion No. 03-010 (June 24, 2003)], slip op. at 8 n. 11. If there is a conflict between a municipal charter and the Constitution or a public general law, the latter prevails. Therefore, we must consider whether a charter amendment providing for a ballot initiative would place the Town Charter in conflict with the Maryland Constitution or public general law.
C. Whether an Initiative Provision in a Charter Would Conflict with State Law
1. Maryland Constitution
In the context of a county charter, the Court of Appeals has ruled that an initiative process that allows voters to propose and enact legislation directly is "constitutionally at odds with the primacy of the elected legislative body" required under Article XI-A, § 3 of the Constitution. Maryland State Administrative Board of Election Laws v. Talbot County, 316 Md. 332, 349, 558 A.2d 724
(1989).[7] As noted above, Maryland's appellate courts have not had the opportunity to consider whether a legislative initiative in a municipal charter would suffer from the same defect. However, in our view, there is a significant distinction between a county charter adopted under Article XI-A and a municipal charter adopted under Article XI-E.
Article XI-A prescribes the methods by which a county may adopt charter home rule and the manner by which a county charter may be amended. Article XI-A, §§ 1, 1A, and 5. While the powers to establish and organize county government are derived directly from Article XI-A and are exercised through adoption or amendment of the county charter, the legislative powers available to a charter county derive, not directly from the Constitution, but through a statutory grant of authority enacted pursuant to Article XI-A, § 2. Ritchmount Partnership v. Board of Supervisors of Elections, 283 Md. 48, 57-59, 388 A.2d 523 (1978). In terms of the structure of county government, Article XI-A, § 3 requires that the charter provide for an "elective legislative body in which shall be vested the law-making power of said . . . County . . . upon all matters covered by the express powers granted [by the Legislature]." A legislative initiative process adopted as part of a county charter would conflict with this direction that the county legislative body is to exercise the law-making power of the county with respect to "all matters" within the scope of that power.
Article XI-E is structured differently. It does not prescribe a specific governmental structure for a municipal corporation. To be sure, the municipal home rule amendment contemplates that each municipality will have a legislative body. See Article XI-E, § 4. However, unlike Article XI-A, there is nothing in Article XI-E to suggest that legislative authority is to be exclusively vested in the legislative body. Furthermore, the Court of Appeals has treated the municipal home rule amendment as a broad general grant of authority to legislate with respect to matters of local concern. Birge v. Town of Easton, 274 Md. 635,644, 337 A.2d 435 (1975); see also 62 Opinions of the Attorney General 275, 293 (1977). Thus, unlike a charter county, a municipal corporation can look directly to the Constitution as a source of legislative power — power that can be delegated as the voters decide is appropriate, pursuant to the terms of a charter. Exercising its authority under Article XI-E, a municipal corporation could adopt a charter amendment providing the voters with the right of legislative initiative, as long as such a provision was consistent with public general law. Article XI-E, § 6.
2. Public General Law
The Legislature has provided two general grants of legislative authority in Article 23A of the Annotated Code of Maryland. Section 1 provides that "[t]he inhabitants of every incorporated municipality . . . constitute . . . a body corporate, and under the corporate name . . . may pass and adopt all ordinances, resolutions or bylaws necessary or proper to exercise the powers granted [under Article 23A] or elsewhere." Section 2(a) gives a municipal legislative body the general power "to pass such ordinances not contrary to the Constitution of Maryland, public general law, or . . . public local law as they may deem necessary . . ."; Section 2(b) enumerates ordinance-making powers ranging in subject matter from advertising to zoning.
Nothing in Article 23A specifically precludes legislation by initiative unless § 2 is considered an exclusive source of legislative power at the municipal level. To be sure, Article 23A, § 2 has been described by the Court of Appeals as "implement[ing] Article XI-E." Inlet Associates v. Assateague House Condominium Ass'n, 313 Md. at 425. However, unlike Article XI-A, the municipal home rule amendment does not require that the General Assembly prescribe the legislative powers of municipal corporations. Thus, a municipality's legislative powers do not derive exclusively from public general laws. A properly adopted charter provision may be an independent source of legislative authority.
Because neither the Constitution nor public general law dictates that legislative powers be vested exclusively in the municipal legislative body, in our view, a municipal charter may authorize voters of a municipality to enact legislation directly through a legislative initiative process.[8]
D. Limitations on the Initiative Process
The scope of an initiative at the municipal level is subject to certain limitations. Legislation enacted through an initiative process could not exceed the authority of the municipal corporation under the State Constitution or conflict with the Constitution or public general law.[9]
For example, under the municipal home rule amendment, a municipal legislative body may not enact any tax measure absent consent of the General Assembly. Article XI-E, § 5. The same prohibition would apply to legislation proposed through an initiative process. Also, if a municipal legislative body were to enact an ordinance that conflicted with public general law, the municipal enactment would be invalid. Coalition for Open Doors v. Annapolis Lodge No. 622, 333 Md. 359, 379,635 A.2d 412 (1994). The same ordinance enacted through the initiative process would be invalid as well. An initiative proposal may also be limited by federal law.
Finally, your letter asked whether a charter amendment could allow adoption of "ordinances and resolutions" through the initiative process. The right of initiative extends only to legislative matters. See, e.g., Scull v. Montgomery Citizens League, 249 Md. 271, 282, 239 A.2d 92 (1968) (only legislative, as opposed to administrative matters, are subject to referendum); 62 C.J.S. Municipal Corporations § 317. While an ordinance is distinctively a legislative act, a resolution may be simply an expression of opinion or relate to the administrative business of a body. Inlet Associates v. Assateague House Condominium Ass'n,313 Md. at 427-28.
 III Conclusion
In our opinion, the Town may amend its charter to provide for an initiative process. Under that process, the voters could enact legislation without the need for action by the Town Council. However, this power would have to be exercised consistently with the State Constitution, public general law, and federal law.
J. Joseph Curran, Jr.
Attorney General
William R. Varga Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] The initiative, referendum, and recall apparently all originated in the cantons of Switzerland. Town of Glenarden v. Bromery, 257 Md. 19, 23
n. 1, 262 A.2d 60 (1970).
[2] Interestingly, in 1914, when Article XVI of the Maryland Constitution was proposed, the General Assembly also considered, but rejected, a limited right of initiative. See Kelly v. Marylanders for Sports Sanity, Inc., 310 Md. 437, 450, n. 6, 530 A.2d 245 (1987); see also Everstine, The General Assembly of Maryland, 1850-1920, 566-70 (1984).
[3] Section 2 of Article XI-E requires the General Assembly to classify municipal corporations into four or fewer classes based on population. The General Assembly has provided that all municipal corporations under Article XI-E constitute a single class. Annotated Code of Maryland, Article 23A, § 10.
[4] Section 4 of Article XI-E sets forth procedures for adoption or amendment of a charter and directs the General Assembly to amplify those provisions by general law. See also Annotated Code of Maryland, Article 23A, § 11-18 (setting out procedures for adoption, amendment, or repeal of a charter); 74 Opinions of the Attorney General 183, 184 (1989).
[5] Section 5 of Article XI-E prohibits a town from imposing any type of tax, license fee, or franchise tax or fee that was not in effect on January 1, 1954, absent express statutory authority, applicable to each municipality in a given class. Furthermore, subject to approval of the voters of the municipality, Section 5 allows the General Assembly to limit the property tax rate that an individual municipality may impose and the maximum debt that it may incur, notwithstanding the general prohibition of Section 1 against the enactment of local laws by the General Assembly.
Section 6 of Article XI-E addresses the relationship between provisions of municipal charters and laws enacted by the General Assembly; it also prohibits charter provisions that attempt to override Sunday blue laws or State restrictions on the manufacture, licensing, or sale of alcoholic beverages.
[6] Examples of permissible charter amendments include authorization for a municipal utility to provide extraterritorial services, 88 Opinions of the Attorney General ___ (2003) [Opinion No. 03-010 (June 24, 2003)]; limits on the number of consecutive terms that members of the municipal governing body may serve, 76 Opinions of the Attorney General 300 (1991); and limits on municipal property tax rates or permissible debt, Woelfel v. Mayor and Aldermen of Annapolis, 209 Md. 314, 121 A.2d 235
(1956); Board of Supervisors of Elections v. Smallwood, 327 Md. 220,608 A.2d 1222 (1992).
On the other hand, an attempt to enact a detailed legislative scheme through the charter amendment process would be invalid. See, e.g., Cheeks v. Cedlair Corp., 287 Md. 595, 415 A.2d 255 (1980) (comprehensive rent control system not valid charter material); Griffith v. Wakefield,298 Md. 381, 470 A.2d 345 (1984) (invalidating charter amendment providing for binding labor arbitration for county firefighters, leaving no decisions to county executive or council); Save Our Streets v. Mitchell, 357 Md. 237, 743 A.2d 748 (2000) (proposed charter amendments that prohibited use of county funds for speed bumps and that established "adequate facility standards" for development held invalid because they eliminated any meaningful discretion for respective county councils).
[7] In contrast, the Court has held that the referendum does not suffer from the same defect. Ritchmount Partnership v. Board of Supervisors of Elections, 283 Md. 48, 388 A.2d 523 (1978) (charter adopted under Article XI-A of the Constitution may reserve to voters the right to petition an enactment of the county council to referendum).
[8] Such a charter provision should also provide a framework for the process. Municipal corporations generally are not subject to the State Election Law, and the General Assembly has authorized municipalities to provide for special municipal elections, subject to provisions of the municipal charter. Article 23A, § 2(b)(29). The charter could set forth general procedures governing the initiative; more detailed provisions could be prescribed by ordinance.
[9] As with legislation passed by the Town Council, legislation enacted by means of an initiative is subject to future amendment or repeal by the Town Council. See Annotated Code of Maryland, Article 23A, § 2(a) (general power of municipal legislative body to enact ordinances). *Page 165